Virgle L. MILLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 54162.

Court of Criminal Appeals of Texas, Panel No. 3.

May 31, 1978.

Ronald W. Aultman and Jerry J. Loftin, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Jerry D. Buckner and Marvin Collins, Asst. Dist. Attys., Fort Worth, for the State.

Before ROBERTS, PHILLIPS and VOLLERS, JJ.

## OPINION

PHILLIPS, Judge.

Appellant was convicted of arson. V.T.C.A., Penal Code, Sec. 28.02(a)(2). He was assessed a five-year probated punishment.

In his first ground of error, appellant questions the sufficiency of the evidence. A charge on circumstantial evidence was given. The facts are given below.

Around 8:35 a. m. on the morning of the fire, February 19, 1975, appellant was in the Purvis Real Estate office, across the street from his restaurant (Virgle's La Barn), to request paper and pen. His stated purpose, according to the office secretary, was to put a "Closed Today" sign on his restaurant. Mr. Purvis also saw appellant in the office. About ten minutes after appellant left the office, Mr. Purvis heard a stationary siren from across the street and he left his office to observe the source. He told his secretary to call the Fort Worth Fire Department as he saw appellant's restaurant on fire. The first alarm was entered at 8:51 a. m.

Appellant's cook,[1] part-time helper, and their driver, on the morning of the fire, observed appellant leaving the area at a fast or medium speed. Two of these witnesses saw appellant run a stop sign in his departure. This was just prior to their 8:50 a. m. arrival at the restaurant. Upon approaching the front door of the restaurant, the cook saw smoke in the interior of the restaurant, as did her companion through a side window. The cook called the fire department from a nearby shop. Approximately an hour later the appellant, having returned to the scene, asked the cook not to mention seeing him earlier that morning.

Fire investigators from the Fort Worth Fire Department arrived at the scene between 9:05 and 9:15 a. m. while the fire was in progress. After the fire was extinguished and under control, the investigators entered the structure and detected the pres-

---

1. Virgie Harris.

ence of flammable liquids or vapors with a portable detection device. One investigator testified to having smelled gasoline within the burnt structure. Samples of carpet, carpet padding, liquid, wood baseboard, and attic insulation were collected as evidence by the investigators. Certain samples were released to a private investigative company and different samples to the Fort Worth Police Department Crime Lab.

A consultant to the private firm, an assistant professor of chemistry, conducted Dean-Stark extraction and gas chromatography tests on State's Exhibits 22 and 25.[2] Both samples were found to contain gasoline. This witness further testified that a fire would not necessarily consume all the gasoline if such were used to start a fire; some amount would remain for subsequent detection.

The Fort Worth Police Department criminalist was provided State's Exhibit 23 for testing.[3] Through a process of steam distillation and gas chromatographic comparison analysis, the criminalist concluded that the carpet specimen in State's Exhibit 23 contained gasoline.

Appellant purchased insurance coverage for his building in the amount of $50,000.00 and for its contents in the amount of $30,-000.00 in December, 1974. The policy was purchased after solicitation from the insurance agent and for an amount of coverage less than one proposed by the agent, but greater than that previously carried.

Both fire investigators testified that based on their experience and investigation they were of the opinion that the fire was of an incendiary origin. The senior investigator testified that he inspected the heater and found nothing therein that caused this fire.

The defense presented extensive testimony in an effort to create the inference that the fire was pyrophoric in origin, i. e., not incendiary. The defense expert testified that he was of the opinion that the fire originated in the central heating unit area of the ceiling. This expert investigated the fire scene more than three months after the fire. None of the defense witnesses conducted gas chromatography tests on the State's exhibits or their own samples from the structure.

The appellant testified that he received an early morning call informing him that his previously comatose and terminally ill ex-wife had regained consciousness temporarily and would be able to discuss their offsprings' welfare; he went to his restaurant to advise his employees not to admit customers until his return; he forgot his key in his haste; he went to the Purvis Real Estate office to make a sign; the office secretary made a sign for him that said "Closed Today;" he threw the sign away because it misstated his intended message; he left to briefly check on his wife who was also hospitalized; he left his wife to confer with his ex-wife where he received a call about the fire; he returned to the scene; he did not ask his cook to conceal his previous presence that morning; he did not see the cook or the others with her when he was leaving the restaurant for the hospitals that morning; his business was good; he did not set fire to his restaurant or have anyone else do so; he had no knowledge of gasoline ever being *inside* his restaurant premises; and he intended to make a claim against his insurance company for the loss incurred and had in fact filed suit for such purpose.

It is undisputed that a criminal conviction can be had solely upon circumstantial evidence. 24 Tex.Jur.2d, Evidence, Sec. 729, p. 403. Every circumstantial evidence case must be tested by its own facts to ascertain whether the evidence is sufficient to sustain the conviction. *Indo v. State*, Tex.Cr.App., 502 S.W.2d 166; *Denney v. State*, Tex.Cr.App., 558 S.W.2d 467; *Baker v. State*, Tex.Cr.App., 447 S.W.2d 172. In making that determination, the facts must be reviewed in the light most favorable to the verdict. *Brown v. State*,

---

2. State's Exhibit 22 was attic insulation; State's Exhibit 25 was a piece of carpet.

3. State's Exhibit 23 was a plastic bag containing red carpet, carpet padding, and pieces of wood.

Tex.Cr.App., 475 S.W.2d 938; *Carlisle v. State*, Tex.Cr.App., 549 S.W.2d 698. It must be noted, especially in this case, that the jury is the ultimate judge of the credibility and weight to be attached to the testimony of the witnesses. *Cockrell v. State*, 135 Tex.Cr.R. 218, 117 S.W.2d 1105; *Wells v. State*, Tex.Cr.App., 447 S.W.2d 939; *Angle v. State*, Tex.Cr.App., 486 S.W.2d 308; *Pope v. State*, Tex.Cr.App., 505 S.W.2d 556.

The elements to be proven by the State in a prosecution under V.T.C.A., Penal Code, Sec. 28.02(a)(2), are: (1) a person (2) starts a fire (3) with the intent to damage or destroy the building (4) to collect the insurance coverage thereon.

The prior Penal Code defined arson as the "wilful burning of any house  .  .  ." Article 1034, V.A.P.C. (1925). The culpable mental state has been changed, nominally, from wilful to intentional. As noted in the Practice Commentary to Sec. 28.02, the "substance" of the culpable mental state required for an arson offense is probably the same. See also *Brown v. State*, 167 Tex.Cr.R. 621, 322 S.W.2d 626; 30 Tex. Jur.2d, Indictments and Informations, Sec. 30, p. 587; 16 Tex.Jur.2d, Criminal Law, Sec. 23; 2 Branch's Ann.Penal Code (3d Edition), Sec. 28.02, pp. 244–245.

V.T.C.A., Penal Code, Sec. 6.03(a) defines the applicable culpable mental state:

"(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

In 5 Am.Jur.2d, Arson and Related Offenses, Sec. 51, p. 842, it is stated:

"It [intent] may also be inferred from the conduct of the accused, from the wilfulness, from the circumstances, [and] from the means employed  .  .  .."

\*  \*  \*  \*  \*  \*

"While the intent cannot be inferred from the mere act of burning, it may be found from all the facts in the case."

It is clear that the offense of arson still requires that the fire involved be of an incendiary origin. This is implicit in the requirement that the burning be intentional. That the fire was of an incendiary origin is supported by the testimony of the chemistry experts who found gasoline to be present in the evidence samples seized from the premises on the day of the fire. *Splawn v. State*, 162 Tex.Cr.R. 197, 283 S.W.2d 66. The senior fire investigator testified that his examination of the heating unit revealed no apparent cause for the fire there, thus negating the defensive theory on the origin of the fire.

Appellant relies heavily upon *Massey v. State*, 154 Tex.Cr.R. 263, 226 S.W.2d 856, for the proposition that the evidence is insufficient to show appellant to have wilfully burned his restaurant. In that case a Highway Patrolman who investigated the case four or five days *after* the fire testified that in the *front* of the cafe there were "trails or sections  .  .  . burned in the floor." Such evidence of "trails" tends to show the use of a flammable liquid in setting an incendiary fire.

The Court in *Massey* was concerned with the indulgence of an inference upon an inference in establishing the fire to be of an incendiary, as opposed to natural or accidental, origin. The first inference was that the flammable liquid was poured prior to the fire. This inference was undermined by the State's failure to show that the condition of the premises was the same when the patrolman investigated the scene at a later date as it was the day of the fire. The second inference built upon the first was that the fire was of an incendiary origin and, in turn, that Massey wilfully set the cafe ablaze. The weakness of the *Massey* case was accentuated by (1) the strong alibi case made out by Massey and his witnesses and (2) the uncontroverted showing that the fire originated in the *rear* of the cafe.

In the instant case the appellant is shown to have been present shortly before the fire was observed and reported. He was trying to notify potential customers and/or his employees that the restaurant

would be closed that day. He left the scene in a hurried manner. Flight is a circumstance tending to show guilt. *Drager v. State*, Tex.Cr.App., 548 S.W.2d 890; *Carvajal v. State*, Tex.Cr.App., 529 S.W.2d 517. He also tried to cover up his prior presence on the day of the fire according to the testimony of his cook. Scientific tests on the samples secured from the premises on the day of the fire revealed the presence of a highly volatile substance in the carpet and attic insulation.

We must conclude, therefore, on the record before us that the evidence was sufficient to sustain the jury's verdict of guilty.

Ground of error one is overruled.

Appellant's remaining eight grounds of error complain of various portions of the prosecutor's closing argument at the guilt-innocence phase of the trial. The complained of arguments are set forth below according to the respective ground of error.

■ Ground of Error II:

"Do you think it was an accident? Now that is where Richard Tabb [4] comes in, who was so impressed with himself and his own credentials that he wouldn't change his opinion if there had been fifty gallons of gasoline on that floor. That is how positive he was right. And fire will not burn down unless accelerated by an accelerant, will it? Isn't that what he said? He has only been working with fire for sixteen years. He has been so busy writing books and giving lectures that I don't know how he had time to even look at a fire. He hasn't been a fireman out in the field for thirty-four years, out in the field working with this stuff and doing the job himself. He's been sitting up in an ivory tower somewhere lecturing."

Appellant's objection [outside the record] was sustained, the jury was instructed to disregard, but the motion for mistrial was overruled. The trial court's instruction to disregard cured any error. *Hodge v State*,

Tex.Cr.App., 488 S.W.2d 779. Ground of error two is overruled.

■ Ground of Error III:

"What about Sylvia Meek? She was the very first witness out there for the Defense, whose character and reputation in the community to be honest and fair dealing is bad."

Appellant's objection [outside the record and calling for conclusions] was sustained, no request for an instruction was made, and the motion for mistrial was overruled. However, the prosecutor's argument amounts to no more than a fair deduction from the evidence. *Alejandro v. State*, Tex.Cr.App., 493 S.W.2d 230. Ground of error three is overruled.

■ Ground of Error IV:

"Virgle Miller left in a hurry. The fire was of incendiary nature. The other possibilities—not probabilities—"

Appellant's objection [incorrect statement of fact and a matter for the jury to determine] was sustained, the jury was instructed to disregard, but the motion for mistrial was overruled. The prosecutor's argument complained of here arose while recapitulating the evidence adduced at trial. No error is shown. *Alejandro v. State*, supra. Ground of error four is overruled.

■ Ground of Error V:

"When you are talking about beyond a reasonable doubt and beyond a moral certainty, why, I'm glad that we've got a rule that says be morally certain they are guilty before you find them guilty. What more is that then being reasonable to somebody? I don't see where there is that much difference where circumstantial evidence—"

Appellant's objection [outside the record] was overruled. Appellant's ground of error does not comport with his trial objection and, therefore, nothing is presented for review. *Bouchillon v. State*, Tex.Cr.App., 540 S.W.2d 319; *Williams v. State*, Tex.Cr.App.,

---

4. An expert witness on fire and explosion investigations from Chicago, Illinois, called by the defense.

531 S.W.2d 606; *Reece v. State*, Tex.Cr. App., 521 S.W.2d 633.

Ground of Error VI:

"True, you have got to decide in part on circumstantial evidence, but is it really that tough when you cut out all the balarney and all the hydrocarbons and hotshots? Is it really all that tough? Is the day ever going to come in this county or any other place, hopefully, that in the United States where you can get the world's foremost experts all to—I don't think there is any real testimony that Tabb is the world's foremost expert—where you can buy the best witnesses in the nation to come and testify for you—"

Appellant's objection was general and coupled with a request to the court "to instruct the jury not to consider that terminology." The court apparently understood the basis for the objection, which was obvious, since it instructed the jury "not [to] consider the statement for any purpose." Appellant's motion for mistrial at that point was overruled. The prosecutor's argument did not inject new and harmful facts material to the issue of guilt or punishment, but constituted a mere general conclusion. Thus, the trial court's instruction to disregard cured any potential prejudice. *Clanton v. State*, Tex.Cr.App., 528 S.W.2d 250; *Holloway v. State*, Tex.Cr.App., 525 S.W.2d 165; *Curtis v. State*, Tex.Cr.App., 519 S.W.2d 883; *Hunt v. State*, Tex.Cr.App., 511 S.W.2d 954; *Jackson v. State*, Tex.Cr.App., 536 S.W.2d 371. Ground of error six is overruled.

Ground of Error VII:

"I hope the day never comes when because you have got the sharpest expert at your command, three of them; the sharpest attorneys at your command, the smoothest verbage at your command, that you walk. That because you are a white collared businessman you get treat-ed differently than any eighteen or nineteen year old burglar.[5]

\*   \*   \*   \*   \*   \*

"I hope the day never comes true when it makes any difference as to how the law is enforced as to whether you're black or white or Jewish or Catholic or Protestant or rich or poor or got a highpowered lawyer or a public defender or a chemist from Chicago—" [6]

Ground of Error VIII:

"Ladies and Gentlemen, you are the one last link in law enforcement because without the Jury it doesn't make any difference how much work we do, how much work the people from the Fire Department do. It just doesn't make any difference without the Jury to have the courage to make a stand and say what they think is right and not be flimflammed by any tricky talk." [7]

The arguments complained of under grounds of error seven and eight constitute a plea for equal law enforcement and justice which is not error. *Alejandro v. State*, supra. The argument complained of in ground of error eight merely urges the jury to be cautious in its evaluation of the jury arguments and/or testimony. No reversible error is shown. *Salinas v. State*, Tex. Cr.App., 458 S.W.2d 933; *Hurd v. State*, Tex.Cr.App., 513 S.W.2d 936. Grounds of error seven and eight are overruled.

Ground of Error IX:

"Again, like I say, I'm going to thank you for your verdict no matter what it is. I know it's been a grueling week and a half for you and I know you are going to do your best to arrive at an appropriate verdict.

"I just ask you to find him guilty because he is guilty under the evidence." [8]

---

5. Appellant's objection [completely outside the record] was overruled.

6. Appellant's objection [outside the record] was sustained insofar as the argument referred to comparisons of rich and poor. The jury was instructed to disregard "any kind of character of argument of that type." Appellant's motion for mistrial was overruled.

7. Appellant's objection [to the phrase "flimflammed by any tricky talk"] was overruled.

8. Appellant's objection was general and was overruled.

Appellant's ninth ground of error reflects nothing more than the prosecutor's deduction of what the evidence shows. No error is shown. *Alejandro v. State*, supra. In addition, appellant's general trial objection presents nothing for review. *Dyche v. State*, Tex.Cr.App., 478 S.W.2d 944. Ground of error nine is overruled.

No reversible error having been demonstrated, the judgment is affirmed.