11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Maurice Charles Henry

Appellant

Vs.                   No.
11-00-00322-CR  -- Appeal from Dallas
County

State of Texas

Appellee

 

The jury
convicted Maurice Charles Henry of unlawful possession of a controlled
substance (less than one gram of cocaine). 
After a presentence investigation and upon appellant=s plea of Atrue@ to two enhancement allegations, the trial
court sentenced him to confinement for a term of 5 years.  We affirm.

                                                                  Issues
Presented

Appellant
presents two issues for appellate review. 
He argues that the evidence is both Alegally insufficient@ and Afactually insufficient@ to support the finding that he possessed the
cocaine.

                                                              Standards
of Review

The
evidence is Alegally insufficient@ to support a conviction (entitling appellant
to a judgment of acquittal) if the reviewing court finds, after considering all
of the facts in the Alight
most favorable to the verdict,@ that a rational trier of fact could not have found all of the elements
of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307 (1979);  Mason v. State, 905 S.W.2d 570, 574 (Tex.Cr.App.1995), cert.
den=d, 516 U.S. 1051 (1996).








The
evidence is Afactually insufficient@ to support a conviction (entitling appellant
to a remand for a new trial) if the reviewing court, after considering all of
the evidence in a Aneutral
light,@ concludes either that Athe evidence is factually insufficient to
support a finding of a vital fact@ or that Athe
finding of a vital fact is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong.@  Goodman v. State, ___ S.W.3d
___ (No. 0120-00, Tex.Cr.App., November 21, 2001)(not yet reported); see also
Johnson v. State, 23 S.W.3d 1, 7-9 (Tex.Cr.App.2000); Cain v. State, 958 S.W.2d
404, 408 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126, 129-30
(Tex.Cr.App.1996).

The jury
is the Aexclusive judge@ of the facts which are proved. 
TEX. CODE CRIM. PRO. ANN. arts. 36.13 & 38.04 (Vernon 1979 &
1981).  See, e.g., Beardsley v. State,
738 S.W.2d 681, 684 (Tex.Cr.App.1987); Bowden v. State, 628 S.W.2d 782, 784
(Tex.Cr.App.1982); and Miller v. State, 566 S.W.2d 614, 618 (Tex.Cr.App.1978).

                                                           Evidence
Before the Jury

There were
five witnesses who testified before the jury. 
They were the four Dallas Police Officers who participated in the arrest
and the chemist who tested the contraband found in connection with appellant=s arrest. 
All of the officers testified that they were licensed peace officers.
The record shows that the officers were assigned to the Southeast Patrol
Division of the Dallas Police Department.

The first
witness, Officer Phillip Elliott, testified that he was Aconducting surveillance@ from a building which let him observe the
parking lot outside a liquor store near the Frazier Courts housing project in
the southeast part of the City of Dallas on February 15, 2000.  Officer Elliott testified that he began
surveillance at approximately 6:00 p.m., that it was still light outside, and
that he had a clear view of what appeared to be Adrug activity@ in
which appellant was involved.  Relevant
portions of Officer Elliott=s testimony read as shown:

Q:
Okay.  What did you see?

 

A: I first
observed [appellant], along with several other individuals standing in front of
the liquor store, which faces Spring [Street]. 
A blue Buick drove up into the parking lot, which would be to the left
side of that liquor store.

 

[Appellant]
approached that vehicle, engaged in conversation, then...went into the
projects.  The Buick left.  Some time passed.  And I observed, you know, the other individuals hanging out.  

 








[Appellant] then came
back, crossing the road in the same direction that he had went previously,
returned back and walked between the red building and the white building.  The red building right behind the white
building that faces Spring [Street].  He
came out on the right side, which is depicted in State=s Exhibit No. 2, where I couldn=t see the officer.  I saw him walk from that area coming back to Spring
[Street].  He stood out there for
awhile, then he mingled back towards the liquor store.  

 

Then a female in a white
Olds drove into the parking lot and went into the parking lot, but not quite to
the opening between the red building and the white building.  And [appellant] went up and conversed with
her.  Then he walked that same area that
he had walked between the red and white building and was out of my sight for a
short time.

 

[After a demonstrative chart was introduced
and discussed, the witness identified appellant as the man he saw that
day.  There was then testimony about
conversations which appellant had with the drivers of automobiles which pulled
into the parking lot and about appellant=s movements to and from the opening between two buildings.]

 

Q: Okay.  And then what happened?

 

A: As he returns and he=s standing here, a female in a white Olds
drove up and parked maybe about midway from the store, towards the right
side.  He walked around, talked with
her.  Very brief discussion.

 

Q: From the driver=s side or the passenger=s side?

 

A: He went to the driver=s side. 
Then he went around the building this way.  Gone a short time, came back around the building and went up and
conducted what I thought was a drug transaction.

 

                                                            *   *  
*

 

Q: Okay.  So what did you do?

 

A: I radioed the
information to other officers that were out there.  I believe another officer dropped [Officer Rudloff] off to watch
from the other side.

 

                                                *   *  
*

 

Q: Okay.  What did you observe next?

 

A: [Appellant] came back
again to blue Olds and conducted basically the same thing as what I saw before
with the female.  Pretty same
scenario.  Except this time I could see
a bag - - a clear bag in his hand.

 








                                                            *   *  
*

 

Q: Okay.  And what did you continue to do?

 

A: As I=m watching him, I receive a radio
transmission right as I was starting to come back around, from Officer
Rudloff.  And he says, AI see where he put it,@ or something to that effect....[W]hen he
told me that, I told him to come on, because I had a visual on him at this point.  

 

In other words, for the
other cover officers to come in to detain him....I could hear what was going
on.

 

Q: All right.  What did you observe next?

 

A: Officer McDonald
brought [appellant] back to this parking lot. 
I then told [the officer] that was him.

 

[Officer Elliott said that he took custody of
the drugs and that they took appellant to the jail.  Officer Elliott then described the field test on the drugs and
the procedure for his end of the chain of custody of the drugs.]

 

During cross-examination by appellant=s counsel, Officer Elliott denied that it was dark.  He admitted that he did not have binoculars
or anything of that nature and that he did not have any audio or video
recording equipment or camera with him. 
He also agreed that he was not close enough to hear what was said during
the conversations that he observed.  He
also agreed that he never saw appellant Ahave narcotics directly in his hand.@  Officer Elliott testified that
he arrived at the scene Abefore 6:00," that the A6:20" shown in the report is the approximate time when Corporal
Klinglesmith retrieved the drugs after appellant conducted the drug
transactions, and that it was still daylight enough for him to see.








The second
witness, Officer Roger Rudloff, testified that he was working with Officer
Elliott, Corporal Klinglesmith, Officer McDonald, and Officer Bricker on
February 15, 2000, when he came into contact with appellant.  They were conducting surveillance on a drug
location in South Dallas.  Officer
Elliott had Aset up across the street from a place@ where they had gotten a complaint about
someone selling drugs.  Officer Elliott
called him on the radio to give him instructions on where to get in order to
see where the drug dealer was hiding the drugs.  Officer Rudloff got into position behind a tree where he could
watch from a distance.  He said that he
was less than 100 yards away, that it was daylight, and that he had a clear
view.  He was looking through
binoculars.  He identified appellant as
the man who walked between the two buildings, came to the area where there were
some traffic cones, reached over, and put something under one of the
cones.  Officer Rudloff got on the radio
and told the other officers that he had seen where appellant put what he
thought were drugs and that he knew Awhere his hiding place was.@  Officer Rudloff maintained
visual contact of the cones and told Corporal Klinglesmith on the radio to look
under the traffic cones.  Officer
Rudloff saw him pick something up, Awhich he stated over the radio was cocaine.@  At
that point, Officer Rudloff called Officer McDonald on the radio and told him
to take appellant into custody.  Officer
Rudloff then walked down to make sure it was the same person.  He identified appellant in open court as the
man who had placed the object under the cones.

The third
witness, Corporal Troy Klinglesmith, testified that on February 15, 2000, he
dropped Officer Elliott off for him to try to get a place of concealment to
watch the activity near a little store in the 4900 block of Spring Avenue where
they believed there was drug activity. 
He is the officer who responded to the radio call to go to the traffic
cones, and he is the one who retrieved the contraband from under the traffic
cone.  He said that it was a Aplastic bag with some crack rocks in it.@  He
identified the bag which he had given to Officer Elliott.  On cross-examination, he agreed that he did
not see appellant Aactually
handle those drugs.@  Corporal Klinglesmith was the senior officer
on the arrest.             

The fourth
witness, Dee Ann Hickerson, was employed by the Southwest Institute of Forensic
Sciences.  She proved her end of the
chain of custody and testified that the contraband was tested and weighed.  The six bags contained a substance with a
gross weight of .27 grams.  It was 70
percent cocaine, and the cocaine itself weighed .19 grams.








The last
witness, Officer Samuel Scott McDonald, testified that he was working on
February 15, 2000, with Corporal Klinglesmith, Officer Elliott, and Officer
Rudloff.  Two of the officers were
conducting surveillance at a location where they had information that narcotics
were being sold.  Officer McDonald was a
Acover officer@ in uniform and in a marked police car.  Officer McDonald was monitoring the surveillance on his police
radio.  Upon receiving a call from
Officer Rudloff that the suspect was leaving the location, Officer McDonald
detained the suspect.  Officer Rudloff
then came and said, AYeah,
that=s him. 
That=s the one I saw.@  Then
Officer McDonald arrested the suspect. 
He identified appellant in open court as the man he arrested.  Officer McDonald said that it was Agetting darker@ at the time of the arrest but that it was not completely dark.

                                                                This
Court=s Ruling

Both
points of error are overruled.  The
evidence discussed above is Alegally sufficient@ to support the conviction. 
Jackson v. Virginia, supra; Mason v. State, supra.  The evidence is also Afactually sufficient@ to support the conviction.  Goodman v. State, supra; Cain v. State,
supra; Clewis v. State, supra.

The
judgment of the trial court is affirmed.

 

BOB
DICKENSON

SENIOR
JUSTICE

 

January 10, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and Dickenson, S.J.[1]

 











[1]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.