

# NUMBER 13-08-165-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KENNETH KEENE,**                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela**
**Memorandum Opinion by Justice Vela**

Appellant, Kenneth Keene, was indicted for the capital murder of Lucia Gonzalez.
*See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2009). A jury found him guilty
and, because the State did not seek the death penalty, the trial court assessed punishment
at life imprisonment. *Id.* § 12.31(a)(2). By one issue, appellant challenges the factual

sufficiency of the evidence to support his conviction.  We affirm.

## I. FACTUAL BACKGROUND

Richard McBride and appellant lived at a make-shift campsite in an undeveloped area of Corpus Christi.  They stayed in separate tents and were the only people living there until about a week prior to this incident when Lucia Gonzalez began staying in appellant's tent.  On the morning of March 2, 2007, McBride, appellant, and Gonzalez were drinking beer.  That afternoon, McBride went into his tent to take a nap.  When he woke up about an hour later, Gonzalez and appellant were arguing about some beer.  McBride left the camp for fifteen minutes to get them some beer.  As he walked back to the camp, he saw appellant sitting in a chair, drinking coffee.  McBride testified that this chair was about fifteen to thirty feet from appellant's tent.  As McBride walked into the campsite, he saw that a fire was "[e]ngulfing" appellant's tent and the surrounding area.  When he asked appellant where Gonzalez was, appellant said, "'Dumb Bitch started my tent on fire'" and left the camp.  McBride found Gonzalez outside of appellant's tent "on all fours engulfed in flames."  He tried to smother the fire on her with a sleeping bag, but the fire was too hot.  Shortly thereafter, fire-department personnel arrived to put out the blaze.  McBride did not see who started the fire, but testified he did not think Gonzalez "would have the means to start the fire."  He said that she did not smoke, did not have a lighter, and did not talk about killing herself.  He testified that at the time of this incident, "[i]t was a wet season" and that "[y]ou could have thrown an open flame on the floor [of appellant's tent] and . . . it wouldn't have started.  It was very wet, and he [appellant] has a leak."  He testified that appellant's shirt did not have a burn mark on it before the fire.

Police found Gonzalez's charred body at the campsite and arrested appellant about 200 yards from the camp, walking along some railroad tracks.  David Leal, the arresting

2

officer, testified that appellant "smelled of burnt smoke all about his clothing." He stated appellant was staggering, had slurred speech, and his breath smelled of alcohol. Officer Leal also testified appellant had "a fresh burn mark" on the upper right sleeve of his shirt and "a fresh redness" to the rear of the upper right arm that appeared to be from a burn.

Appellant waived his *Miranda*[1] rights and agreed to an interview with Officer Hugo Stimmler. The interview was videotaped and admitted into evidence during trial. During the interview, appellant said that he remembered sitting in the chair, drinking coffee while Gonzalez was inside his tent. He recalled nothing about the fire, and he did not know how it started. He said that he had a candle in his tent and that Gonzalez was smoking a cigarette in the tent. He denied that he was intoxicated at that time.

Tommy Pleasant, an investigator for the State Fire Marshall's Office, brought a dog named "Tess" to the crime scene. Tess was trained to find approximately fourteen odors of ignitable liquids and alerted where appellant's tent had been located. Specifically, Tess alerted next to the corner of the bed. Afterwards, he took Tess to the police station, where Tess alerted on a pack of cigarettes that appellant had in his shirt pocket when arrested. Tess also alerted on appellant's left shoe and left sock.

Jim Swindall, the manager for the State Fire Marshall's arson laboratory, tested the evidence in this case for ignitable liquids and found kerosene on the pack of cigarettes that appellant had in his shirt pocket. Swindall testified that for kerosene to get on the pack of cigarettes, it "would have to touch something that had kerosene on it." When asked for his opinion about what was the ignitable fluid used to start the fire, he said "the only ignitable liquid I found was kerosene." He did not find ignitable liquids on the other evidence

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

submitted to him in this case. He testified that because most shoes are held together with glue, it is "very common" for a dog to alert on a shoe that later tested negative for ignitable liquids.

On cross-examination, defense counsel told Swindall that the burned tent contained a mattress, which was kept off of the ground by tires. When defense counsel asked him, "If you were going to start something on fire like that, how much kerosene would you need to get it going?", he said, "[Y]ou don't need but a small amount. . . ." He stated that even though bug sprays contain hydrocarbons, he had never seen a bug spray that contained kerosene.

Evidence of the fire's incendiary origin came from Captain Mark Wagner, a fire-and-arson investigator for the Corpus Christi Fire Department. He testified that the fire was "an arson or an incendiary fire, meaning that it was intentionally set." He stated that the fire started in the area where the tent was located and that the fire burned in a concentric pattern which "was almost a circle" around a mattress, which was in the tent. He said this was a quick, hot-burning fire. When the prosecutor asked him what the fire's heat source was, he said, "What we determined was that an ignitable liquid was used in order to consume and to reach that temperature that quickly. . . . [W]hether it was a match or a lighter or whatever that ignited that, we didn't find any remnants of that, . . . ." When the prosecutor asked him, "So you made the determination that an ignitable liquid was used?", he said, "Yes." He said that the ignitable liquid was completely consumed by the fire and that a cigarette would not have started a fire like the one in this case. He ruled out that the fire was started by a candle. On cross-examination, he testified that he did not find any flammable liquids at the scene.

4

About a month after the fire, appellant gave Officer Larry Serna a voluntary interview, during which appellant stated that he left the tent to make coffee and that while "making the coffee, he passed out only to awake to seeing the tent burning." He tried to go in and get Gonzalez out, and he also tried to administer "mouth-to-mouth," but was not successful.

Darryl Smith, an assistant principal at a local school, met appellant, whom he knew as "Gator," through Metro Ministries in Corpus Christi. In 2005, he hired appellant to do some yard work for him. Smith noticed that appellant drank alcohol while working. Smith paid appellant for the work, and afterwards, saw him again regarding a dispute about how much money Smith owed him for the work. While appellant was in the county jail for Gonzalez's murder, Smith received two letters[2] from appellant. The trial court admitted them into evidence during trial, and Smith read portions of them out loud to the jury. With respect to the first letter, Smith read the following: "'Darryl, hey, what gives? I'm still sitting here in jail for the murder of my girl that you did. . . .'" The letter was signed, "'It's your doing, Gator.'" With respect to the second letter, he read the following: "'Hey, Darryl, . . . . You killed Lucia [Gonzalez] and then burned my tent and went in and told the cops that I did it. The Gator.'" Smith testified that he did not know Lucia Gonzalez.

On cross-examination, Smith testified that he considered the behavior shown by the letters to be "[d]esperate." He testified that appellant was a "classic, chronic alcoholic."

Dr. Ray Fernandez, the medical examiner who performed Gonzalez's autopsy, testified that the cause of her death was "smoke inhalation and thermal injuries, the burns, . . . ." He said her blood alcohol level was .377.

---

[2]The trial court admitted the letters into evidence as State's exhibits 54 and 55. The first letter is dated April 29, 2007, and the other is dated June 7, 2007.

The defense rested without calling any witnesses.

## II. Discussion

In his sole issue, appellant challenges the factual sufficiency of the evidence to support his conviction. Specifically, he contends the evidence does not show that he started the fire.

*A. Standard of Review*

In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the factfinder's verdict;" or (2) "considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.2d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees

with it." *Id.*

*B. Applicable Law*

Our review of a factual-sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti,* 273 S.W.3d at 281. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The indictment in this case alleged, in relevant part, that appellant "did then and there intentionally or knowingly cause the death of an individual, LUCIA GONZALEZ, by SETTING A STRUCTURE ON FIRE while in the course of committing or attempting to commit ARSON, . . . ." (emphasis in original). A person commits capital murder "if the person commits murder as defined under Section 19.02(b)(1) and: . . . (2) the person intentionally commits the murder in the course of committing or attempting to commit . . . arson, . . . ." Tᴇx. Pᴇɴᴀʟ Cᴏᴅᴇ Aɴɴ. § 19.03(a)(2). Section 19.02(b)(1) provides that a person commits murder if he or she "intentionally or knowingly causes the death of an individual." *Id*. § 19.02(b)(1). A person commits arson "if the person starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage: (1) any vegetation, fence, or structure on open-space land; . . . ." *Id*. § 28.02(a)(1) (Vernon Supp. 2009). "'Open-space land' means real property that is undeveloped for the purpose of human habitation." *Id*. § 28.01(5) (Vernon 2003).

Capital murder by arson occurs only when the appropriate mens rea is satisfied: an intent to murder and under the facts of this case, an intent to destroy or damage any

7

structure on open-space land. *See Hogue v. State*, 711 S.W.2d 9, 13 (Tex. Crim. App. 1986). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). Intent may "be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).

*C. Whether the Evidence is Factually Sufficient to Prove That Appellant Committed Arson*

The offense of arson requires that the fire involved be of an incendiary origin. *Faulk v. State*, 608 S.W.2d 625, 627 (Tex. Crim. App. 1980); *Miller v. State*, 566 S.W.2d 614, 618 (Tex. Crim. App. 1978). "This is implicit in the requirement that the burning be intentional." *Miller*, 566 S.W.2d at 618. In an arson case, intent cannot be inferred from the mere act of burning. *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980).

In this case, the investigators' testimony established that the fire was of an incendiary origin. Pleasant testified that Tess alerted to the odor of an ignitable liquid where appellant's tent had been located. Captain Wagner "ruled" the fire to be "an arson or an incendiary fire, meaning that it was intentionally set." He testified that it was a quick, hot-burning fire that started in the area where the tent was located and that "an ignitable liquid was used" to fuel the fire. Thus, a rational jury could conclude beyond a reasonable doubt that the fire was incendiary in origin and intentionally set.

The evidence showing that appellant set the fire was that an ignitable liquid was used to fuel the fire. Tess alerted to the odor of an ignitable liquid where appellant's tent had been located, on appellant's left sock, and on a package of cigarettes that was in appellant's shirt pocket. Swindall found kerosene on the package of cigarettes. He testified that for kerosene to get on the pack of cigarettes, it "would have to touch

8

something that had kerosene on it." When asked for his opinion about the identity of the ignitable fluid used to start the fire, Swindall said "the only ignitable liquid I found was kerosene."

In addition to the forensic evidence, other evidence showed that shortly before McBride left the camp to get beer, appellant and Gonzalez were arguing about some beer. A prior argument between the defendant and the victim can be a circumstance supporting guilt. *Hernandez v. State*, 895 S.W.2d 508, 510 (Tex. App.–Fort Worth 1995, pet. ref'd). Motive is a factor to consider when determining whether a defendant committed arson. *Krebsbach v. State*, 962 S.W.2d 728, 734 (Tex. App.–Amarillo 1998, pet. ref'd), *see Guevara*, 152 S.W.3d at 50 (stating that "[m]otive is a significant circumstance indicating guilt"). While appellant's tent was burning, appellant sat fifteen to thirty feet away from it. While an accused's presence at the crime scene is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to establish guilt. *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Crim. App. 1987). Other facts showed that when McBride went to look for Gonzalez, appellant left the camp. A factfinder may draw an inference of guilt from the circumstance of flight from the crime scene. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007). In addition to motive, presence, opportunity, and flight, appellant made inconsistent statements about the fire. He told McBride that Gonzalez set the tent on fire. Later that day, in his videotaped statement, he said he had no memory of the fire and did not know how it started. About a month later, he told Officer Serna that he saw his tent burning with Gonzalez inside of it. In two letters, he accused Smith of burning his tent and murdering Gonzalez. Inconsistent statements are probative of wrongful conduct and are also a circumstance of guilt. *Guevara*, 152 S.W.2d at 50. When arrested shortly after the fire,

9

appellant "smelled of burnt smoke all about his clothing" and had "a fresh burn mark" on the upper right sleeve of his shirt and "a fresh redness" to the rear of his upper right arm that appeared to be from a burn. McBride testified that appellant's shirt did not have a burn mark on it before the fire. An accused's appearance indicating connection with a fire is a circumstance linking the accused to the fire. *Baugh v. State*, 776 S.W.2d 583, 585 (Tex. Crim. App. 1989).

Appellant's letters accusing Smith of setting fire to the tent and murdering Gonzalez contained information contrary to appellant's earlier statements that Gonzalez set the fire, that he had no memory of the fire, and that he did not know how the fire started. Thus, a rational jury could conclude that appellant fabricated the letters in an attempt to shift the blame to an innocent third party. A defendant's fabrication of stories about a fire is a factor to consider when determining whether the defendant is guilty of arson. *Krebsbach*, 962 S.W.2d at 734.

The controverting evidence showed that: (1) McBride did not see who set the fire; (2) appellant told McBride that Gonzalez set the tent on fire; (3) appellant told Officer Serna that he tried to get Gonzalez out of the tent and administer "mouth-to-mouth;" (4) in his videotaped statement, appellant said he had no memory of the fire, that he had a candle in his tent, and that Gonzalez was smoking a cigarette in his tent prior to the fire; (5) at the crime scene, investigators did not find any suspicious paraphernalia such as a container with a flammable liquid in it; and (6) appellant accused Smith of murdering Gonzalez and setting the tent on fire. This evidence was obviously rejected by the jury in favor of the evidence showing that the fire was incendiary in origin and that appellant set the fire.

After viewing all the evidence in a neutral light, we hold that a rational jury could find that appellant intentionally committed arson beyond a reasonable doubt. This finding is

not so weak that it is clearly wrong and manifestly unjust, nor is the finding against the great weight and preponderance of the evidence. *See Willis v. State*, 785 S.W.2d 378, 382 (Tex. Crim. App. 1989) (court upheld arson conviction against sufficiency challenge when evidence showed fire was intentionally set through use of a flammable accelerant, and defendant's story of his actions during fire was inconsistent with physical evidence)*; Krebsbach*, 962 S.W.2d at 733-34 (court upheld arson conviction against factual-sufficiency challenge when evidence showed fire intentionally set through use of a flammable accelerant, dog trained in detecting presence of flammable liquids alerted to presence of such liquids inside house where fire started, and defendant had motive, opportunity, and had fabricated stories about the fire).

*D. Whether the Evidence is Factually Sufficient to Prove That Appellant Murdered Gonzalez While in the Course of Committing or Attempting to Commit Arson*

In order for the jury to have properly found that appellant committed murder, sufficient evidence must have existed that he intentionally or knowingly caused Gonzalez's death. TEX. PENAL CODE ANN. § 19.02(b)(1). A jury may infer intent from any facts which tend to prove its existence, including the acts words, and conduct of the accused, the method of committing the crime, and from the nature of wounds inflicted on the victim. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Here, Gonzalez died at the scene of the fire, which the jury could reasonably conclude was intentionally set by appellant. Her death resulted from smoke inhalation and from burns to her body. Appellant and Gonzalez were alone at the camp when she sustained her fatal injuries, and they were alone at the camp fifteen minutes before McBride discovered the fire. Appellant and Gonzalez had argued shortly before the fire. Thus, appellant had a possible motive to kill her. Even though motive is not an element

11

of murder, it may be a circumstance that is indicative of guilt. *Clayton*, 235 S.W.3d at 780; *see Guevara*, 152 S.W.3d at 50 (stating that "[m]otive is a significant circumstance indicating guilt."). When McBride confronted appellant at the scene of the fire, appellant showed no concern that Gonzalez's life was in danger, and he did not help McBride in his attempt to put the fire out on her body. Instead, appellant called her a "[d]umb bitch" and fled the scene. This callous behavior evidences a lack of remorse. A jury can rely on a defendant's lack of remorse to infer intent to commit capital murder. *Darby v. State*, 145 S.W.3d 714, 721 (Tex. App.–Fort Worth 2004, pet. ref'd) (citing *Hernandez*, 819 S.W.2d at 810) (stating that a jury may infer intent from any facts that tend to prove its existence, such as defendant's acts, words, and conduct), *see also Guevara*, 152 S.W.3d at 51 (stating that an accused who did not "appear to be upset at the crime scene" is evidence that suggested the accused's complicity in the crime). Taking into account appellant's callous behavior, along with his videotaped statement that he did not remember the fire, a rational jury could reasonably conclude that appellant's statement to Officer Serna that he tried to help Gonzalez was implausible and a lie. An implausible explanation to the police is probative of wrongful conduct and is also a circumstance of guilt. *Guevara*, 152 S.W.3d at 50.

Even though the letters accusing Smith of the crime do not detail any of appellant's acts of committing arson or murder, appellant, by blaming Smith for the fire and death of Gonzalez, effectively stated that the fire was intentionally set and that it resulted in Gonzalez's death, which is consistent with the physical evidence. *See Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003) (stating that although accused's exculpatory letter did not specifically detail his acts in furtherance of committing aggravated sexual assault, it supported hypothesis that victim's rejection of his sexual advances

started the cycle of violence that led to her death).

Viewing all the evidence in a neutral light, we hold that a rational jury could find beyond a reasonable doubt that appellant intentionally caused the death of Gonzalez while in the course of committing or attempting to commit arson. This finding is not so weak that it is clearly wrong and manifestly unjust, nor is the finding against the great weight and preponderance of the evidence. Therefore, we hold that the evidence is factually sufficient to support the conviction for capital murder beyond a reasonable doubt. We overrule the sole issue for review.

### III. CONCLUSION

We affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 12th day of November, 2009.