

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00052-CR

_____

SALVADOR RUBIO, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR15025

_____

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Salvador Rubio appeals his conviction for first-degree felony arson of a habitation. *See* Tex. Penal Code Ann. § 28.02(a)(2)(D). In his sole issue on appeal, Rubio contends that the State failed to present sufficient evidence to prove beyond a reasonable doubt that his conscious objective or desire was to damage or destroy the habitation. Because we conclude that the evidence was sufficient to support the jury's determination that Rubio intended to cause damage or destruction to the habitation, we affirm the conviction.

## I. Background

The Smith family hired Rubio to do remodeling work on their house in Granbury, Texas. Over time, Rubio began exhibiting what Mr. Smith described as strange behavior indicative of possible drug use. The Smiths eventually decided that Rubio could no longer work for them. On December 16, 2020—the day before Mr. Smith had planned to terminate Rubio's employment—Rubio set the Smiths' house on fire using small piles of flammable material and paint thinner that he had placed in multiple locations throughout the house.

After starting the fire, Rubio called 911 and told the dispatcher that he had set the house on fire. When officers arrived at the house, they heard fire alarms going off and, through an open window, observed Rubio inside the house. Rubio then crawled out of the window—at the officers' direction—and his clothing and shoes were melting and smoldering. When Officer Daniel Sweeney, one of the responding

2

officers, attempted to render aid to Rubio using water from an outdoor faucet, Rubio stated that he did not want to be "put out." He refused any medical treatment, stating, "This is not what's concerning me right now. . . . I did this for a reason." He told Officer Sweeney that he had used lacquer thinner to set a fire inside the house. Officer Sweeney subsequently found two cigarette lighters on Rubio's person, which Rubio told Officer Sweeney he had used to ignite the house. According to Rubio, some people had shown up to kill him, and he had to set the house on fire to try and get away from them. Further explaining his reason for setting the fire, he told Officer Sweeney that by setting the house on fire, the people that were trying to kill him would run away from the fire and stop trying to kill him. He also told Officer Sweeney that he was responsible for setting the fire and that he felt he needed to explain to the Smiths why he had done it.

At Rubio's trial, the jury heard testimony from Mr. Smith and the responding officers and viewed Officer Sweeney's body camera footage, which captured what he had observed when he responded to the Smiths' house on the day of the fire. The jury found Rubio guilty and assessed his punishment at forty-five years' confinement, and the trial court entered judgment on the verdict.

## II. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

3

307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

## III. Applicable Law

As relevant here, a person commits the offense of arson if he starts a fire with intent to destroy or damage a building or habitation knowing that it was located on property belonging to another. Tex. Penal Code Ann. § 28.02(a)(2)(D). A person acts "with intent" when he has the "conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). A jury may infer intent from any facts that tend to prove its existence. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. [Panel Op.] 1980); *Miller v. State*, 566 S.W.2d 614, 618 (Tex. Crim. App. [Panel Op.] 1978); *Turner v. State*, Nos. 02-11-00070-CR, 02-11-00071-CR, 2013 WL 530972, at *1 (Tex. App.—Fort Worth Feb. 14, 2013, pet. ref'd) (mem. op., not designated for publication). In arson cases, intent "cannot be inferred from the mere act of burning," but it may otherwise be found from all the facts in the case, including the acts, words, and conduct of the accused and the method of committing the crime. *Beltran*, 593 S.W.2d at 689; *Miller*, 566 S.W.2d at 618; *see Dues*, 634 S.W.2d at 305; *Turner*, 2013 WL 530972, at *1.

## IV. Analysis

Rubio complains that the State failed to present sufficient evidence of only the intent element. We conclude that the jury may have inferred from the evidence before it that Rubio intended to damage or destroy the Smiths' house.

The jury heard testimony and viewed body camera footage of Rubio telling Officer Sweeney that he had deliberately set the house on fire "for a reason." He

stated that he had used lacquer thinner and cigarette lighters to ignite the house in an effort to evade the people who he believed had shown up at the house that day to kill him. Explaining his thought process to Officer Sweeney, he believed that if the house was on fire, the people trying to kill him would run from the fire and stop trying to kill him. The evidence showed that Rubio had attempted to create a large house fire by using lacquer thinner to set several small fires in multiple locations throughout the house—as opposed to a single fire. We agree with the State that the jury could infer from Rubio's acts that he had done so to increase the level of protection that the smoke and flames from a burning house would have had against the people allegedly trying to kill him.

Evidence of Rubio's words and conduct after he started the fire reflects the same thought process. Specifically, he had to be instructed to exit the burning house, and when Officer Sweeney unsuccessfully attempted to render aid, Rubio was apparently more concerned about the burning house's deterrent effects on those people's plan to kill him than he was about being on fire himself. Indeed, he stated, "This is not what's concerning me right now. . . . I did this for a reason."

Rubio ultimately took responsibility for setting the fire and felt that the Smiths needed to understand the reason why he had done it.

Viewing the evidence in the light most favorable to the jury's guilty verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that

6

Rubio intended to damage or destroy the Smiths' house when he deliberately set multiple fires throughout the house. Accordingly, we overrule Rubio's sole issue.

## V. Conclusion

Having overruled Rubio's sole issue on appeal, we affirm the conviction.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 14, 2023