

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TIMOTHY SCOTT SKEENS, | § | No. 08-18-00195-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 394th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Brewster County, Texas |
| | § | |
| Appellee. | § | (TC# CRO 4606) |
| | § | |

## O P I N I O N

Appellant, Timothy Scott Skeens, appeals from a jury verdict finding him guilty of arson in the first degree. Electing to have the trial court assess punishment, he was sentenced to twenty-seven years' incarceration, with restitution of $3,250.00. Skeens files this appeal asserting as his sole point of error the evidence was insufficient to convict him of first-degree arson. We disagree, and affirm the trial court's judgment.

## FACTUAL BACKGROUND

The arson occurred on May 23, 2017, at the Alpine West Apartments. The fire started in Apartment 207, where Appellant resided.

Mary Estrada, Appellant's girlfriend, was named the sole lessee for the apartment in

February, 2017. Appellant lived in Estrada's apartment with her until Estrada moved out on May 18, 2017, the Thursday before the fire. Estrada and Appellant were having relationship problems, which resulted in Estrada's move. While living in Apartment 207, Estrada never made any complaints about electrical issues to Rudy Bustamante, the manager for the Alpine West Apartments. When Estrada left the apartment, she only took her two dogs, leaving behind all her personal effects, including a turtle aquarium, and a recliner, which she left in the bedroom. Estrada was not present at the apartment on May 23, 2017, the day of the fire, until almost 11a.m. — after the fire had occurred.

The night before the fire, Appellant's mother, Kimberly Skeens, received a text from Appellant, stating he did not have "good thoughts" about tomorrow. Appellant also said he was rarely wrong so "whatever happens thanks for u remainin[g] u" and that he had to go so she could live better. The record shows Appellant was inside the apartment at the time of the fire as he video-called Aretha Staples, the mother of his child, at 9:54 A.M., showing her flames in the apartment and telling her to tell his child Appellant loved her.

The first person on the scene was off-duty Officer Alexander Lopez, who lived approximately 50 to 75 feet from Appellant's apartment and was there within minutes of the call of a fire at Alpine West Apartments. Upon arrival, Officer Lopez did not see anyone in the vicinity of Appellant's apartment other than Appellant, who was standing in the stairway, facing the fire. Lopez called for Appellant and escorted him to the parking lot, leaving him propped up on the passenger side of Appellant's car.

2

Robert Galindo, a handyman, staying at a neighboring hotel, saw smoke coming from the Alpine West Apartments and drove towards the location. Once there, Galindo saw Appellant in the driver's seat of his car – Appellant was crying and said, "I wish I would have went with the fire." Galindo got into Appellant's car and together they drove away from the scene to Galindo's apartment. Galindo described Appellant as "hysterical" during the car ride, so much so that Galindo had to take over driving for Appellant. Appellant also asked Galindo if he had a gun. Fearing for his safety as well as Appellant's, Galindo stopped to pick up an acquaintance, Raul Bernal, to help transport Appellant. Together Galindo and Bernal called 911 to disclose Appellants whereabouts. The arresting officer was Sergeant Hector Holguin.

Officer Holguin transferred Appellant to the police department for questioning by Captain Losoya. Upon arrival, Appellant told Officer Holguin "he should have gone with the fire" and became aggressive, clenching his fists when placed in front of Captain Losoya. When Captain Losoya tried to take Appellant's handcuffs off for questioning, he tried to flee and Appellant had to be restrained. Appellant was not able to respond to any questioning, Captain Losoya determined Appellant "wasn't in a good mental state" and told Officer Holguin to take Appellant to the hospital to be medically cleared before booking him into the county jail.

Fire Marshal John Kondratick determined the fire was "incendiary," meaning intentionally set, ignited by some "unknown type of open flame." Kondratick testified the fire was initially slow burning and centered in the middle of the living room, originating from a recliner. Kondratick examined all the rooms in the apartment as well as the apartment's exterior and determined there was no evidence of improperly discarded smoking materials, no evidence of unattended candle

3

use, and no competent accidental ignition sources present. Additionally, the breaker panel, located in the kitchen, "did not display evidence of failure or malfunction." Kondratick noted there was a zippo lighter as well as personal effects of Estrada's located on the recliner and on a nearby couch, including photographs of and cards from Estrada. Kondratick did locate Estrada's turtle aquarium outside of the apartment, away from where Estrada claimed to have left it.

The jury convicted Appellant of first-degree arson of a habitation, as charged in the indictment. He was sentenced to twenty-seven years' incarceration, with restitution of $3,250.00. This appeal followed.

**DISCUSSION**

***Issue***

In his sole issue, Appellant contends the evidence is insufficient to support his conviction for first-degree arson because he did not intend to damage or destroy a habitation.

***Standard of Review***

Under the Due Process Clause of the U.S. Constitution, the State is required to prove every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In *Brooks*, the Texas Court of Criminal Appeals held the only standard a reviewing court should apply when examining the sufficiency of the evidence is the legal sufficiency standard articulated in *Jackson*, which requires deference to be given to the jury's credibility and weight determinations. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010). The critical inquiry in a legal sufficiency challenge, as set out in *Jackson* and to which we refer as the "*Jackson* standard," is whether the evidence in the record could

4

reasonably support a conviction of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). When reviewing the legal sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational juror could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005). Additionally, we treat circumstantial evidence as being equally probative as direct evidence. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004)(*citing Templin v. State*, 711 S.W.2d 30, 33 (Tex.Crim.App. 1986)). Therefore, a lack of direct evidence is not dispositive on the issue of the defendant's guilt; guilt may be established by circumstantial evidence alone. *Id.*, at 49 (*citing Miles v. State*, 165 S.W. 567, 570 (Tex.Crim.App. 1914)). We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Thomas v. State*, 303 S.W.3d 331, 333 (Tex.App.—El Paso 2009, no pet.)(*citing Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct charge accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Malik*, 953 S.W.2d at 240.

We bear in mind that the trier of fact is the sole judge of the weight and credibility of the evidence, and we must presume that the fact finder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014)(*citing Jackson*, 443 U.S. at 319). A reviewing court may not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the fact finder. *Isassi v. State*, 330

5

S.W.3d 633, 638 (Tex.Crim.App. 2010)(*citing Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999)). Our only task under this standard is to determine whether, based on the evidence and reasonable inferences drawn therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

### *Applicable Law*

Arson is statutorily defined as "start[ing] a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage: any building, habitation, or vehicle knowing that it is within the limits of an incorporated city or town." TEX.PENAL CODE ANN. § 28.02(A)(2)(A). A person charged with arson acts with specific intent to damage or destroy a habitation if it is his conscious objective or desire to engage in the conduct or cause the result. *See* TEX.PENAL CODE ANN. § 6.03(a); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. [Panel Op.] 1980). Although the mere act of burning cannot be the basis for intent in an arson case, intent can be inferred from the acts, words, and conduct of the Appellant. *Miller v. State,* 566 S.W.2d 614, 618 (Tex.Crim.App.1978).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). "It is well settled that the mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction; however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant." *Thomas v. State,* 645 S.W.2d 798, 800 (Tex.Crim.App. 1983).

6

The offense of arson is complete when the actor starts a fire with the requisite culpable mental state, even if no damage actually occurs. *Romo v. State*, 593 S.W.2d 690, 693 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds by Wagner v. State*, 687 S.W.2d 303, 313 n.7 (Tex.Crim.App. [Panel Op.] 1984) (op. on reh'g); *Beltran*, 593 S.W.2d at 689. Intent is almost always inferred from circumstantial evidence of the person's acts, words, and conduct because "[o]ne's acts are generally reliable circumstantial evidence of one's intent." *Laster v. State*, 275 S.W.3d 512, 524 (Tex.Crim.App. 2009) (quoting *Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex.App.—Houston [1st Dist.] 1982, no pet.)); *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004).

The State's indictment alleged that Appellant "with intent to damage or destroy a habitation . . . start a fire . . . by igniting a recliner chair with an unknown incendiary . . .," Appellant argues the evidence is legally insufficient to establish he intended to damage or destroy the habitation, that is the apartment. Appellant argues he intended to destroy the recliner and its contents by fire but not the apartment, so therefore, the evidence is insufficient to support arson in the first degree and at most he is guilty of "reckless arson." Because Appellant does not challenge the remaining elements of the offense, we need not address them.

### *Analysis*

After a thorough review of the record, in the light most favorable to the verdict, we hold the jury verdict satisfies the *Jackson* standard, and the evidence is sufficient to prove intent. *Salinas*, 163 S.W.3d at 737.

First, the State's fire marshal, Kondratick, established that the fire set in the living room

7

was an incendiary fire — one that was set intentionally in an area where, ordinarily, absent some other cause, there should not be a fire. Kondratick, a fire expert and investigator, concluded it was an incendiary fire, evidenced by the lack of accidental ignition sources. Using fire patterns, Kondratick was able to determine that the origin point was a recliner, located in the middle of the living room. The living room itself had no malfunctioning electrical sockets, no candles, and no electrical appliances present. Further, while opportunity is not an element of arson, it is a circumstance indicative of guilt. *Clayton*, 235 S.W.3d at 781. As testified by off-duty Officer Lopez, Appellant was alone in the apartment when the fire started. When the fire started, no other individuals were present in the apartment other than Appellant. Further, the evidence was probative of an intentionally set fire.

Second, Appellant had motive, which is also a factor indicative of guilt. *Clayton*, 235 S.W.3d at 781. The record shows Appellant was having relationship problems with his partner, Estrada, causing her to move out. Estrada testified that when she left the apartment on the prior Thursday, the recliner was located in the bedroom and not in the living room; therefore, testimony indicates Appellant moved Estrada's recliner from the bedroom into the middle of living room and placed Estrada's personal items on and near it. Additionally, Appellant appeared to have moved Estrada's live turtle and its aquarium outside of the apartment. This evidence could allow a reasonable fact finder to infer Appellant intended to destroy Estrada's personal effects and her recliner.

Third, Kondratick testified Appellant's behavior leading up to the fire is not indicative of a person involved with an accidental fire. There is no evidence Appellant tried to put out the fire,

and instead of calling 911, Appellant called Staples, the mother of his child, to say goodbye. Further, Appellant texted Staples pictures of the fire as it spread beyond the recliner and onto the walls of the apartment. Appellant also texted his mother the day before the fire, saying he had "bad thoughts" about tomorrow and that he had to go so she could "live better." Furthermore, Appellant wished he had "went with the fire." In light of the Appellant's above statements, it is reasonable for a fact finder to conclude Appellant intentionally set the fire and was conscious that act could lead to the destruction of the apartment including himself.

Appellant's sole issue is overruled.

## CONCLUSION

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

August 19, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

9