**Opinion issued April 4, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00182-CR

————————————

## JASON ALLEN VIA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 82367-CR**

---

## MEMORANDUM OPINION

A jury found appellant Jason Via guilty of possession of a controlled substance (methamphetamine) in an amount of four grams or more but less than 200 grams, a second-degree felony, which was enhanced to a first-degree felony by at

least one prior felony conviction. The jury assessed punishment at 50 years' imprisonment.

On appeal, Via's first two issues assert that the trial court erred in overruling his motion to suppress. In his third issue, Via argues that the evidence is insufficient to support his conviction. We affirm.

## Background

Lake Jackson Police Officer Z. Jacoby testified at the suppression hearing and at trial that, on the evening of July 13, 2017, he was on patrol and was surveilling a home known for recent drug activity (the Jenkins residence) when he noticed a red 2006 Dodge Caravan that he had recently located narcotics (methamphetamine) in. He stopped the Dodge Caravan after observing the driver fail to signal within 100 feet of a turn. The officer asked Via, the driver, for his driver's license and proof of insurance. Via replied that he had left his license at his mother's residence in Freeport, Texas, but he did provide Officer Jacoby with his name, license number, and date of birth. Via also told the officer that he was staying at the Jenkins residence after first stating his mother had kicked him out and he was staying with a friend in Freeport. Officer Jacoby did not detect any narcotics odor in the vehicle.

Because Via appeared nervous to Officer Jacoby—"more nervous" than people commonly are when stopped by police—he asked Via to get out of the Dodge Caravan and to move to its front. The officer then contacted dispatch to verify that

2

Via had provided accurate personal information. At trial, Officer Jacoby testified that Via provided conflicting information about where he was coming from, where he was going to, and where he was living; Via's story was "not adding up" and he thought Via was not being honest.

While waiting for a response for verification of Via's personal information, the officer conducted a pat-down search of Via's clothing for weapons after Via had denied having any weapons on his person. While conducting the pat-down, Officer Jacoby felt something in Via's left front pocket. When the officer asked Via what was in his pocket, Via replied that it was a cell phone and a lighter underneath the phone. Officer Jacoby testified that he asked Via for consent to remove the item from his pocket and that Via consented.

The video of the pat-down from Officer Jacoby's body camera reflects that, after Via said that a cell phone and then a lighter were in his pocket, Officer Jacoby asked: "I'm gonna grab it, okay?," to which Via replied, "Okay, go ahead." He then recovered what he observed to be a small bag of marihuana from Via's pocket. Via admitted to Officer Jacoby that the substance was marihuana.

The front-seat passenger was Krista Glockzin; Officer Jacoby had recently stopped her in the same vehicle and found methamphetamine. When Officer G. Soria arrived as back-up, Officer Jacoby had Via sit on the ground while Glockzin was removed from the vehicle. Officer Jacoby then asked Via if there was anything else

in the vehicle, and Via replied that there was a "roach"—a partially smoked marihuana cigarette. Glockzin also told Officer Jacoby that there was a "roach" in the vehicle.

Officer Jacoby searched the Dodge Caravan for narcotics based on Via's statement that there was marihuana in it. During that search, he found a green, Crown Royal bag inside a larger purse-type bag that was between the front passenger seat and the driver's seat; that bag contained a large quantity of methamphetamine wrapped in three separate packages. He also recovered a small digital scale from inside the bag that had a white crystal-like residue that indicated it had been used to weigh methamphetamine.

Officer Jacoby then detained Via in the back of Officer Soria's patrol car while he further searched the Dodge Caravan. Officer Soria's patrol car was equipped with video surveillance that recorded Via while he was detained in the back seat. Despite being handcuffed behind his back, Via was able to answer several calls on his cell phone, and during one call was recorded saying, "I'm in the back of a . . . cop car. They caught me."

Officer Jacoby asked Via and Glockzin if the narcotics belonged to either of them, and initially they both denied responsibility for the methamphetamine and were arrested. After she was arrested and was being placed in his patrol car, Glockzin told Officer Jacoby that the methamphetamine was Via's. Laboratory analysis later

4

confirmed the recovered substances to be between four and two hundred grams of methamphetamine and less than two grams of marihuana.

Via was indicted for the offense of possession of a controlled substance with intent to deliver—habitual. Glockzin, meanwhile, pled guilty. At trial and after the jury was seated, Via filed a motion to suppress. After an evidentiary hearing, the trial court denied the motion. The trial court found that Officer Jacoby was objectively justified in conducting the pat-down search and that Via had consented to the officer's search and seizure of the items in his pocket.

The jury found Via guilty of the lesser-included offense of possession of a controlled substance. At punishment, Via pled true to the two enhancement paragraphs. The jury assessed punishment at 50 years confinement in the Texas Department of Criminal Justice—Institutional Division, and a fine of $10,000.

## Suppression

Via's first issue asserts that Officer Jacoby's pat-down was an unreasonable search. His second issue contends that the trial court erred in finding that Via consented to the search and seizure of the item in his pocket.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id.* at 190. We

give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review de novo mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

The trial court's findings of fact relevant to Via's first issue are:

6

- Officer Jacoby was watching the Jenkins residence as part of a narcotics investigation.

- During his surveillance, he saw a 2006 Dodge Caravan that he recognized from a recent encounter in which the van contained narcotics.

- Officer Jacoby stopped the vehicle for failing to properly signal a turn.

- When he approached the vehicle, Officer Jacoby did not smell narcotics.

- The vehicle was being driven by Via.

- Via did not have a driver's license or proof of insurance with him, but he provided his name and date of birth to Officer Jacoby.

- Officer Jacoby had not had any prior encounters with Via.

- Officer Jacoby believed that Via appeared more nervous than most people stopped for traffic violations.

- Via gave conflicting statements regarding the location of his driver's license and residence. Via said he left his license at his mother's house, but his mother had kicked him out. He then said he was staying with a friend in Freeport and later said he was staying at "Spencer's house." Via's stated route did not match the course he was driving.

- Spencer and his sister were the targets of Officer Jacoby's narcotics investigation.

- While awaiting confirmation on Via's identity, Officer Jacoby conducted a pat-down search of Via.

- Officer Jacoby asked Via if he had any weapons. While Officer Jacoby did not testify that he requested the pat down for officer safety, it can be inferred that this was his concern because he asked Via if he had any weapons.

- During the pat-down, Officer Jacoby felt an item in Via's pocket, and Via said it was a lighter.

- Officer Jacoby requested permission to remove the item, and Via gave him permission.

- Officer Jacoby removed the item and found it to be marihuana.

- Officer Jacoby asked Via if there was anything in the vehicle, and he responded that there was a "roach": a marihuana cigarette.

The trial court made the following relevant conclusions of law:

- During this time it was reasonable to conduct a pat down search for officer safety given the totality of the circumstances known to Jacoby, those being that (1) the vehicle had been previously stopped with narcotics in it; (2) that Defendant [Via] was staying with persons who were the object of a drug surveillance; (3) that he had previously seen this vehicle operating in the same area earlier that evening; (4) that Defendant [Via] provided several conflicting statements concerning the absence of his driver's license as well as a plausible explanation of where he was going; and (5) that the area had frequent drug purchases. A reasonably prudent person under these same circumstances would be warranted in believing that his safety, or the safety of others, was in danger.

- Defendant [Via] gave consent for Jacoby to remove the bag of marijuana from his pocket.

The Fourth Amendment prohibits unreasonable searches and seizures, and a stop-and-frisk by law enforcement implicates the Fourth Amendment's protections. *Lerma*, 543 S.W.3d at 190 (citing *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). A Fourth Amendment analysis of an officer's stop-and-frisk has two prongs: (1) whether the officer's action was justified at its inception, and (2) whether the search and seizure

were reasonably related in scope to the circumstances that justified the stop in the first place. *Id*. (citing *Terry*, 392 U.S. at 20).

> During the course of a detention, an officer may, in certain circumstances, conduct a pat-down search of an individual to determine whether the person is carrying a weapon. In order to justify a pat-down, the officer must reasonably believe that the suspect is armed and dangerous, such that the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. Reasonable suspicion in this context is based on an objective assessment of the officer's actions in light of the facts and circumstances surrounding the detention. The officer's subjective level of fear is not controlling. The question is whether a reasonably prudent person would justifiably believe that his safety or the safety of others was in danger.
>
> The purpose of the pat-down search is to protect the officer's safety during interactions such as this, when the suspect is in close quarters with the officer. The Supreme Court has noted that it would be unreasonable to require police officers to take unnecessary risks in performing their duties and that traffic stops are "especially fraught with danger to police officers."

*Id*. at 191 (citations in footnotes omitted).

Reasonable suspicion does not require that the officer "be absolutely certain that the individual is armed." *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). And "there is 'no legal requirement that a policeman must feel 'scared' by the threat of danger' because '[s]ome foolhardy policemen will never admit fear.'" *Id.* (quoting *United States v. Tharpe*, 536 F.2d 1098, 1101 (5th Cir. 1976), *overruled in part on other grounds by United States v. Causey*, 834 F.2d 1179 (5th Cir. 1987)).

9

Via argues that Officer Jacoby's pat-down of his pocket was not based on specific and articulable facts that he might possess a weapon. The Court of Criminal Appeals has addressed pat-downs in the context of drug trafficking several times. Relying on *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000) and *O'Hara*, the court stated:

> We have recognized that it is objectively reasonable for a police officer to believe that persons involved in the drug business are armed and dangerous. *See Carmouche v. State*, 10 S.W.3d at 330 *and cases cited* (objectively reasonable for police to believe that seller of narcotics might be armed because concealed weapons are part and parcel of the drug trade). We decline to hold that this does not apply when a police officer has not known a specific drug-dealer to carry weapons in the past. It still is objectively reasonable for a police officer to believe that this person could still be armed and dangerous at any time he is engaged in the business of selling drugs especially when this drug-dealer had been arrested for the same offense just two days before and moves his hand toward his pocket during an investigative detention based on reasonable suspicion. We decline to hold that it is objectively unreasonable for a reasonably prudent officer to protect himself by frisking a possibly violent drug-dealer for weapons even though the officer conducting the frisk in the case at hand testifies that he was not subjectively afraid of the suspect. *See O'Hara*, 27 S.W.3d at 551 (police officer not legally required to testify that he was afraid of the suspect because some policemen will never admit fear).

*Griffin v. State*, 215 S.W.3d 403, 409–10 (Tex. Crim. App. 2006) (footnotes omitted);[1] *see also Furr v. State*, 499 S.W.3d 872, 880-81 (Tex. Crim. App. 2016)

---

[1]    In support, the *Griffin* court noted the following: "For example, according to a December 2, 2002, Federal Bureau of Investigation press release, approximately 23% of the 69 police officers killed in the line of duty in 2001 in incidents not related to the events of September 11th were investigating

(holding that pat-down for weapons of suspected drug user with nervous demeanor in "high drug, high crime" area was reasonable); *Lemons v. State*, 135 S.W.3d 878, 884 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (finding pat-down proper when officer testified that, among other things, when he is involved in narcotics situations, he conducts pat-downs to check for weapons because there is greater chance of weapons being present).

The suppression-hearing evidence and the trial court's fact findings reflect: Officer Jacoby was surveilling a residence known for narcotics trafficking; the vehicle being driven by Via had just left that residence; Via told the officer he was staying at the residence; Officer Jacoby had recently stopped the same vehicle and found narcotics; Via gave the officer conflicting information about his route and where he was living, which made the officer question Via's honesty; and Via was more nervous than most in a traffic stop. Based on the applicable law, we conclude that the trial court did not abuse its discretion in denying Via's motion to suppress. The trial court did not err or abuse its discretion in concluding that a reasonable officer in Officer Jacoby's situation, considering all of the circumstances, would be justified in fearing for his safety and therefore conducting a pat-down search of Via for weapons. *See Lerma*, 543 S.W.3d at 192; *Furr*, 499 S.W.3d at 880-81. We

"drug-related matters" or "suspicious persons." *Griffin*, 215 S.W.3d at 409 n.7.

overrule Via's first issue.

Via's second issue challenges the trial court's ruling that Via consented to Officer Jacoby's search and removal of the item in Via's pocket.

> Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." One of those exceptions is a search conducted with the person's voluntary consent. The validity of a consent to search is a question of fact to be determined from all the circumstances. A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent. "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation. The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced.

*Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011).

Via argues that his statement to Officer Jacoby to go ahead and grab the item in his pocket was "mere acquiescence" to Officer Jacoby's command. We, like the trial court, have reviewed the video-recorded interaction between Officer Jacoby and Via from Officer Jacoby's body camera. To repeat, the video reflects that, after Via said that a cell phone and then a lighter were in his pocket, Officer Jacoby asked: "I'm gonna grab it, okay?," to which Via replied, "Okay, go ahead." The tones and the words of both Officer Jacoby and Via in this interaction demonstrably support the trial court's finding that Officer Jacoby asked for permission and Via gave

12

permission. Because the trial court did not err or abuse its discretion in finding consent, we overrule issue two.

## Sufficiency of the Evidence

In his third issue, Via argues that the evidence is insufficient to support the jury's guilt finding on the lesser-included offense of possession of a controlled substance. He specifically argues that the evidence does not support the conclusion that he exercised care, control, or management over the controlled substance or that he was a party to another's commission of the offense.

A challenge to the sufficiency of the evidence requires that we identify the essential elements of the charged offense and ask whether the evidence and reasonable inferences therefrom, viewed in the light most favorable to the conviction, would permit a rational juror to find each element of the charged offense beyond a reasonable doubt. *Braughton v. State*, __ S.W.3d __, __, 2018 WL 6626621, at *11 (Tex. Crim. App. Dec. 19, 2018). A reviewing court considers all of the evidence adduced at trial, whether it was admissible or inadmissible. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). Whether a conviction rests on direct or circumstantial evidence, the sufficiency standard remains unchanged. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The analysis requires us to keep in mind that the jury is the sole judge of the evidence's weight and credibility. *Braughton*, __ S.W.3d at __, 2018 WL 6626621,

at *11. We presume that the jury resolved any conflicting inferences in favor of the verdict. *Id.* Although this standard mandates great deference to the jury, we do not defer to a jury's conclusions that are based on "mere speculation or factually unsupported inferences or presumptions." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007).

> A criminal conviction may be based upon circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *Miller v. State*, 566 S.W.2d 614, 617 (Tex. Crim. App. 1978). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Clayton*, 235 S.W.3d at 778. In circumstantial evidence cases, it is not necessary that every fact and circumstance "point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *see Hooper*, 214 S.W.3d at 13.

*Temple v. State*, 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013); *see also Gibbs v. State*, 555 S.W.3d 718, 728 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

To prove unlawful possession, the State must establish that the accused (1) exercised care, control, or management over the contraband and (2) knew that the substance was in fact contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The State may prove these elements through direct or circumstantial evidence, but the evidence must establish that the

14

accused's connection with the substance was more than merely fortuitous. *See Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011); *Le v. State*, 479 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

In *Henry*, this court articulated applicable Texas law on possession of a controlled substance:

> Possession need not be exclusive. *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). "When the accused is not in exclusive possession of the place where the contraband is found, then additional, independent facts and circumstances must link the defendant to the contraband in such a way that it can reasonably be concluded that [the defendant] had knowledge of the contraband and exercised control over it." *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *see also Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The evidence, whether direct or circumstantial, "must establish, to the requisite level of confidence, that the accused's connection with the drug[s] was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "This rule simply [states] the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.* at 406. The accused's presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Roberts*, 321 S.W.3d at 549 (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). However, when combined with other direct or circumstantial evidence, presence or proximity may be sufficient to establish the elements of possession beyond a reasonable doubt. *Id.* Additionally, when narcotics are secreted, the State must address whether the accused knew of the existence of the secret place and its contents. *Id.* (citing *Medina v. State*, 242 S.W.3d 573, 576 (Tex. App.—Waco 2007, no pet.)).

> Links that may establish knowing possession include: (1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and the

accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162, n.12. The "number of . . . links proven is not as important as the logical force that they collectively create." *Wiley*, 388 S.W.3d at 814 (quoting *Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). "The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *Id.* (quoting *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)).

*Henry*, 409 S.W.3d at 42–43; *see also Le*, 479 S.W.3d at 467–68.

We turn to the evidence in this case. The methamphetamine was found inside a vehicle being driven by Via at the time of the traffic stop that led to the seizure. Via had just left a house known to the officer to be involved in drug trafficking, Via claimed to be living at that house, and Via was more nervous than common for a traffic stop. The methamphetamine was inside a bag between the driver's seat and the front passenger seat. Clearly, Via was present at the time the methamphetamine was discovered, was in close proximity to it, and had access to and control over the enclosed space where the methamphetamine was found. *See, e.g., Le*, 479 S.W.3d at 465–68 (affirming pickup truck driver's possession conviction where marihuana was

16

found in the bed of the truck, as well as lesser amounts in several places inside the truck's cab, including a lunch box located between the driver's and the passenger's seats, the glove box, behind the passenger's seat, and in the passenger's-side cup holder, and passenger had stipulated in is guilty plea that marihuana belonged to both him and the driver); *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (affirming possession conviction of front-seat passenger in truck where cocaine was located in factory compartment in back wall of truck, and noting that cocaine was within vicinity and easily accessible to passenger); *see also Poindexter*, 153 S.W.3d at 412 ("The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had sole possession of the contraband, only that there are affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them."). In addition to being in close proximity to Via, the methamphetamine was conveniently accessible to him. *See Robinson*, 174 S.W.3d at 326 (for contraband to be conveniently accessible, it must be "within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest the accused had knowledge of the contraband and exercised control over it").

Furthermore, other contraband (marihuana) was found on Via's person, and Via told the officer that more marihuana was in the vehicle. Via indicated a

consciousness of guilt in his recorded phone call in which he said, "They caught me." And last, Glockzin told Officer Jacoby that the methamphetamine was Via's.

Based on these links and the cumulative force of the evidence, a rational jury could have concluded, beyond a reasonable doubt, that Via exercised actual care, custody, or control of the methamphetamine. We overrule issue three.

## Conclusion

We affirm the judgment of the trial court.

Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).